**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

TIMOTHY L. OGDEN and )
CLARISSA M. OGDEN, )
                  )
           Plaintiffs, )   No. 03:11-CV-00650-HU
                  )
   v. )
                  )
ROBERT WARREN TRUCKING, LLC, )   **MEMORANDUM OPINION AND ORDER**
and RICHARD WARREN, *aka* DICK )          **ON MOTION FOR**
WARREN, )           **SUMMARY JUDGMENT**
                  )
           Defendants. )

_____

Kevin T. Lafky
Lafky & Lafky
429 Court Street NE
Salem, OR 97301

Jon Weiner
Law Office of Jon Weiner
1595 Commercial Street NE
Salem, OR 97301

      Attorneys for Plaintiffs

David M. Briggs
Randy P. Sutton
Saalfeld Griggs PC
P.O. Box 470
Salem, OR 97308-0470

      Attorneys for Defendants

1 - MEMORANDUM OPINION AND ORDER

HUBEL, Magistrate Judge:

The plaintiffs Timothy L. and Clarissa M. Ogden bring this action to recover unpaid wages and damages from their former employer Robert Warren Trucking, LLC ("RWT"), and Richard Warren ("Warren"), individually. The case is before the court on the defendants' Motion for Summary Judgment.[1] The motion is fully briefed, and the court heard oral argument on the motion on July 24, 2012.

### BACKGROUND FACTS

RWT is a trucking company with a fleet of approximately twenty dump trucks, located in Cloverdale, Tillamook County, Oregon. RWT's primary business is transporting rock, sand, and topsoil. Warren holds a controlling ownership interest in RWT, and acts as the company's chief operating officer, chief executive officer, and manager, controlling all of the day-to-day operations of the company. Warren has ultimate decision-making authority for RWT, and his responsibilities include hiring and firing employees, as well as the determination of all policies relating to employee wages and hours.[2]

Timothy and Clarissa Ogden were hired by RWT as truck drivers on or about August 4, 2010.[3] As part of their jobs as truck drivers, the Ogdens performed "pre-trip" inspections of their trucks on a daily basis. They drove the trucks between RWT's place

---

[1]Dkt. #26.

[2]Dkt. #19, First Amended Complaint, ¶¶ 6, 7 & 8; Dkt. #21, Answer to First Amended Complaint, ¶¶ 6, 7 & 8.

[3]Dkt. #19, ¶¶ 9 & 11; Dkt. #21, ¶¶ 9 & 11.

2 - MEMORANDUM OPINION AND ORDER

1  of business and various job sites.  The Ogdens contend that RWT did
2  not pay them (or any of its truck drivers) for the time spent on
3  the pre-trip inspections, or the drive time between RWT's business
4  location and the job sites.  The Ogdens claim these policies
5  violate "the minimum wage and overtime provisions of both the Fair
6  Labor Standards Act (FLSA) and state wage-and-hour laws."[4]  The
7  Ogdens argue RWT's policies result in employees working more than
8  forty hours a week without compensation for overtime.[5]

9      On October 19, 2010, Mrs. Ogden called Warren at 3:33 p.m.,
10  and left a voice mail message indicating she had some concerns
11  about the wage payment policies.[6]  Warren returned the call at 4:58
12  p.m. the same day, and talked with Mr. Ogden.[7]  The conversation
13  lasted four minutes.[8]  According to Mr. Ogden, he told Warren he
14  wanted to talk "about this prevailing wage" for certain types of
15  jobs, and Warren responded that he did not "have to pay that."[9]
16  Mr. Ogden claims Warren stated he was exempt from payment of any

17

18  _____

19      [4]Dkt. #19, ¶¶ 13, 14, & 15.

20      [5]Dkt. #19, ¶ 15.  "The FLSA mandates that employees who work
    in excess of forty hours in a week receive overtime compensation at
21  a rate not less than one and one-half times their regular hourly
    wage."  *Childers v. City of Eugene*, 922 F. Supp. 403, 404-05 (D.
22  Or. 1996) (Coffin, M.J.) (citing 29 U.S.C. § 207(a)(1)).

23      [6]Dkt. #28, Affidavit of David M. Briggs ("Briggs Aff."), Ex.
    B - excerpts from the Deposition of Clarissa M. Ogden ("C. Ogden
24  Depo."), p. 40.

25      [7]Dkt. #28, Briggs Aff., Ex. A - excerpts from the Deposition
26  of Timothy L. Ogden ("T. Ogden Depo."), p. 75.

27      [8]*Id.*

28      [9]*Id.*, p. 76.

3 - MEMORANDUM OPINION AND ORDER

prevailing wage. Mr. Ogden told Warren he had spoken with "BOLI" (the Oregon Bureau of Labor and Industry) about the matter, which caused Warren to become agitated and go "off the handle."[10] According to the Ogdens, both of whom were listening to the call on a speaker phone, Warren stated, "You know what, you're done, you're through."[11] Mr. Ogden asked for clarification a couple of times as to whether Warren was firing the Ogdens, and Warren continued to state either, "You're through," or "You're done."[12] Mr. Ogden then hung up the phone.[13] About a minute later, Warren tried to call the Ogdens back, but they did not answer the phone. He tried again, and this time left a voice mail message. The parties have an audio recording of the voice mail message, so its contents are not in dispute. Warren stated:

> Hey, you hung up too quick. I didn't fire you. You're done taking my trucks to the job. I'll arrange to get them there. And Ann just pulled your tickets, you have been paid, we got them right here, your time tickets. Thank you, bye.[14]

Warren called the Ogdens again the next morning, but they again did not answer the phone. Warren left another voice mail message, of which an audio recording also exists, stating:

---

[10] *Id.*, pp. 76-77.

[11] *Id.*, p. 77.

[12] *Id.*, pp. 77-78; Dkt. #40-1, Ex. A to Declaration of John H. Weiner, excerpts from C. Ogden's Deposition ("C. Ogden Depo-Weiner Decl."), pp. 52-53

[13] T. Ogden Depo., p. 78.

[14] Dkt. #26, p. 4; *see* T. Ogden Depo., p. 92; C. Ogden Depo., p. 58.

Hey Tim, this is Dick. I wanted to apologize for yesterday. When you mention BOLI, I get pissed. Anyway, why don't you come over tomorrow and we'll talk this out. We can pull all the rules and regulations and I'll have the computer for you so you can see all of them. And you do get paid from the time you leave the shop. You're on your own to Tillamook and Lincoln City as far as turning your tickets in. I don't make out your tickets for you. Everybody has to make out their own, I don't even want to. But, you get all your travel time, you have to turn them in, that's what I told Clarissa the other day. I think there's some other guys that are mixed up on that, too. But, give me a call or come on over, bye.[15]

Mr. Ogden called Warren that afternoon, stating he would not be coming into the office to talk with Warren. Mr. Ogden told Warren, "I'm not coming in to talk to you. I don't feel safe about it."[16]

The Ogdens believed Warren had fired them. Their explanation for his quick call-back, and statement that they had hung up too soon and actually were not fired, is that Warren (or his wife) had realized firing the Ogdens for complaining about the wage policies was impermissible, and Warren was attempting to retract his statement in order to stay out of trouble.

The Ogdens sent RWT a handwritten letter dated October 20, 2010, that was received by RWT on October 25, 2010, regarding "Hour and wage dispute and notice of unpaid wages."[17] In the letter, the Ogdens claimed RWT owed them: (a) unpaid wages for all uncompensated time between the time they clocked in each day until

---

[15]Dkt. #26, p. 4; T. Ogden Depo., pp. 105-06.

[16]T. Ogden Depo., p. 118.

[17]Dkt. #27, Affidavit of Richard Warren ("Warren Aff.", Ex. A.

5 - MEMORANDUM OPINION AND ORDER

they clocked out, including each day's fifteen-minute pre-trip inspection of the truck, and the time spent driving back and forth between "the yard" and job sites; (b) "all wages due for public works projects, and federally funded projects at the legal rate set by statue [sic] for said projects"; and (c) overtime wages for all hours worked in excess of eight hours per day.[18]

On October 28, 2010, Warren sent Mr. Ogden a check for $411.60, and Mrs. Ogden a check for $273.00, representing the amounts Warren estimated to be due for the Ogdens' pre-trip inspections and travel time. The Ogdens received the checks a day or two later.[19]

### THE PLAINTIFFS' CLAIMS

In their First Claim, asserted against RWT and Warren, the Ogdens contend Warren discharged them from their jobs at RWT in retaliation for their complaints about the company's wage policies, in violation of the anti-retaliation provision of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3).[20] An employer who violates the anti-retaliation provision of the FLSA is "liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion,

---

[18]*Id.*; Dkt. #19, ¶ 16; Dkt. #21, ¶ 15.

[19]Dkt. #27, Warren Aff., ¶¶ 6 & 7; T. Ogden Depo. p. 134.

[20]"[I]t shall be unlawful for any person . . . (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter. . . ." 29 U.S.C. § 215(a)(3).

6 - MEMORANDUM OPINION AND ORDER

1  and the payment of wages lost and an additional equal amount as
2  liquidated damages."    29 U.S.C. § 216(b).    In addition, a
3  prevailing plaintiff in such an action is entitled to "a reasonable
4  attorney's fee to be paid by the defendant, and costs of the
5  action."    *Id.*    On this claim, the Ogdens seek "Lost wages and
6  liquidated damages in an amount to be determined at the time of
7  trial, and such other legal and equitable relief as this Court
8  deems appropriate, in addition to reasonable attorney fees and
9  costs. . . ."[21]

10      In their Second Claim, asserted against RWT, the Ogdens
11  contend RWT failed to make timely payment to them of wages that
12  were due at the time their employment was terminated, in violation
13  of ORS § 652.140[22].    The Ogdens contend, therefore, that they are
14  entitled to nine days of penalty wages under ORS § 652.150[23], as
15  well as attorney fees and costs.[24]

---

17      [21]Dkt. #19, Amended Complaint, p. 12, ¶ 1.

18      [22]"When an employer discharges an employee or when employment
    is terminated by mutual agreement, all wages earned and unpaid at
19  the time of the discharge or termination become due and payable not
    later than the end of the first business day after the discharge or
20  termination."    ORS § 652.140(1).

21      [23]For willful failure to pay termination wages when due, ORS
    § 652.150 provides for a penalty equal to the employee's regular
22  hourly rate for eight hours per day until paid, for a maximum of
    thirty days.    However, for employees who are required to submit
23  regular time records to the employer, the penalty may be avoided if
    the employer pays "the wages the employer estimates are due and
24  payable . . . and the estimated amount of wages paid is less than
    the actual amount of earned and unpaid wages, as long as the
25  employer pays the employee all wages earned and unpaid within five
    days after the employee submits the time records."    ORS
26  § 652.150(1).    *See* Dkt. #34, p. 20.

27      [24]Dkt. #19, p. 12, ¶ 2.

7 - MEMORANDUM OPINION AND ORDER

1    In their Third Claim, asserted against RWT, the Ogdens claim
2  they were discharged in retaliation for their wage complaints in
3  violation of ORS § 652.355(1).[25]   The Ogdens claim that pursuant to
4  ORS § 659A.885[26], they are "entitled to equitable relief and
5  economic damages (including back pay, benefits, and front pay) in
6  an amount to be determined at trial along with other compensatory
7  damages[,] . . . punitive damages . . . [and] reasonable attorney
8  fees[.]"[27]

9

10                    ***SUMMARY JUDGMENT STANDARDS***

11    Summary judgment should be granted "if the movant shows that
12  there is no genuine dispute as to any material fact and the movant
13  is entitled to judgment as a matter of law."  Fed. R. Civ. P.
14  56(c)(2).  In considering a motion for summary judgment, the court
15  "must not weigh the evidence or determine the truth of the matter
16  but only determine whether there is a genuine issue for trial."
17  *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002)
18  (citing *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th
19  Cir. 1996)).

20

---

21    [25]"An employer may not discharge or in any other manner
22  discriminate against an employee because . . . [t]he employee has
   made a wage claim or discussed, inquired about or consulted an
23  attorney or agency about a wage claim. . . ."  ORS § 652.355(1)(a).

24    [26]In a civil action for unlawful discrimination, "the court may
25  order injunctive relief and any other equitable relief that may be
   appropriate, including but not limited to reinstatement or the
26  hiring of employees with or without back pay, . . . costs and
   reasonable attorney fees at trial and on appeal[.]"    ORS
27  659A.885(1).

28    [27]Dkt. #19, Amended Complaint, ¶¶ 34 & 38; *id.*, p. 12 ¶ 3.

8 - MEMORANDUM OPINION AND ORDER

1    The Ninth Circuit Court of Appeals has described "the shifting
2    burden of proof governing motions for summary judgment" as follows:

> The moving party initially bears the burden of
> proving the absence of a genuine issue of
> material fact. *Celotex Corp. v. Catrett*, 477
> U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d
> 265 (1986). Where the non-moving party bears
> the burden of proof at trial, the moving party
> need only prove that there is an absence of
> evidence to support the non-moving party's
> case. *Id.* at 325, 106 S. Ct. 2548. Where the
> moving party meets that burden, the burden
> then shifts to the non-moving party to desig-
> nate specific facts demonstrating the exis-
> tence of genuine issues for trial. *Id.* at
> 324, 106 S. Ct. 2548. This burden is not a
> light one. The non-moving party must show
> more than the mere existence of a scintilla of
> evidence. *Anderson v. Liberty Lobby, Inc.*,
> 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed.
> 2d 202 (1986). The non-moving party must do
> more than show there is some "metaphysical
> doubt" as to the material facts at issue.
> *Matsushita Elec. Indus. Co., Ltd. v. Zenith
> Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct.
> 1348, 89 L. Ed. 2d 528 (1986). In fact, the
> non-moving party must come forth with evidence
> from which a jury could reasonably render a
> verdict in the non-moving party's favor.
> *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. In
> determining whether a jury could reasonably
> render a verdict in the non-moving party's
> favor, all justifiable inferences are to be
> drawn in its favor. *Id.* at 255, 106 S. Ct.
> 2505.

20   *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th
21   Cir. 2010).

22       Employment discrimination actions require particular scrutiny
23   at the summary judgment stage. "As a general matter, the plaintiff
24   in an employment discrimination action need produce very little
25   evidence in order to overcome an employer's motion for summary
26   judgment." *Chuang v. Univ. of Calif. Davis, Bd. of Trustees*, 225
27   F.3d 1115, 1124 (9th Cir. 2000). This minimal evidence standard is
28   due to the nature of employment cases, where "'the ultimate

9 - MEMORANDUM OPINION AND ORDER

question is one that can only be resolved through a searching
inquiry – one that is most appropriately conducted by a factfinder,
upon a full record.'"   *Id.* (quoting *Schnidrig v. Columbia Mach.,
Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996)).

### *DISCUSSION*

The threshold question underlying all of the Ogdens' claims is
whether or not they were discharged on October 19, 2010.   The
defendants acknowledge that it is unlawful for an employer to
retaliate against an employee for complaining about nonpayment of
wages for all hours worked.[28]   However, the defendants argue the
Ogdens were not actually discharged, because "to the extent
Mr. Warren stated that the Ogdens were terminated in his brief
phone call on the afternoon of October 19, 2010, he promptly
retracted the termination decision minutes later and communicated
this decision in his voice mail message."[29]   The defendants assert
the Ogdens acknowledged, in their depositions, that "to the extent
they may have been fired in the first phone conversation, that
decision was immediately retracted."[30]   The defendants argue there
is no genuine issue of fact here, and they are entitled to judgment
as a matter of law.[31]

The Ogdens argue they were, in fact, discharged, and they were
not obligated to accept Warren's retraction and reinstatement

---

[28]Dkt. #26, p. 10.

[29]*Id.*, p. 8.

[30]*Id.*, p. 11.

[31]*Id.*, pp. 10-13.

10 - MEMORANDUM OPINION AND ORDER

1  offer.  They note Warren raised his voice and became angry during
2  the conversation in which he terminated them, causing Mr. Ogden to
3  be concerned that if he returned to RWT's offices, a physical
4  altercation might ensue, or he might even "end up in jail . . .
5  since he was in Mr. Warren's hometown, [and] Mr. Warren grew up
6  with local police officers[.]"[32]

7      In reply, the defendants urge the court to consider the
8  reasonableness of the Ogdens' belief that they had been fired.
9  They argue the initial conversation and Warren's subsequent voice
10  mail are not "two separate and distinct events," as characterized
11  by the Ogdens, but instead they should be viewed as a continuum.
12  They assert the content of Warren's voice mail message, beginning
13  with, "Hey, you hung up too quick," indicates he did not believe
14  the conversation was over at the time Mr. Ogden hung up the phone.
15  The defendants maintain, "[I]t is up to the court to evaluate what
16  the words meant."[33]   The defendants also allege the Ogdens "were
17  looking to be terminated,"[34] evidenced by their quick trip to the
18  unemployment office to seek unemployment benefits.

19      The plaintiffs and the defendants all rely, to some extent, on
20  the holding in *NLRB v. Cement Masons Local No. 555*, 225 F.2d 168
21  (9th Cir. 1955), in which the court considered, in the context of
22  the National Labor Relations Act, whether a union worker was
23  "actually discharged" when he was taken off of a job for a period
24  of time.  The parties in the present case point to the *NLRB* court's

25

26      [32]Dkt. #34, p. 11.

27      [33]Dkt. #43, pp. 2-3.

28      [34]*Id.*, p. 3.

11 - MEMORANDUM OPINION AND ORDER

1  holding that "[n]o set words are necessary to constitute a
2  discharge; words or conduct, which would logically lead an employee
3  to believe his tenure had been terminated, are in themselves
4  sufficient." *NLRB*, 225 F.2d at 172 (citing, in a footnote, federal
5  cases from the 8th and 10th Circuits, and state court cases from
6  Iowa, Minnesota, California, and Pennsylvania).

7        The defendants in the present case assert that this standard
8  is consistent with their position, arguing it was not reasonable
9  for the Ogdens to conclude they had been discharged.  The Ogdens
10 argue their belief was reasonable, based on the content of their
11 first conversation with Warren.  Mr. Ogden asked Warren three times
12 if the Ogdens were fired, and Warren repeatedly stated they were
13 either "through" or "done."   The Ogdens assert they "were not
14 required to hear a fourth time, a tenth time, or a twenty-seventh
15 time that they were 'done' or 'through' before hanging up."**35**

16       The parties appear to agree that resolution of the discharge
17 question is dependent upon the reasonableness of the Ogdens' belief
18 that they had been discharged during their first phone conversation
19 with Warren.   Their opposing views regarding whether or not this
20 belief was reasonable clearly demonstrate the existence of a
21 genuine issue of material fact that must be resolved at trial.
22 This type of fact-based determination is particularly inappropriate
23 at the summary judgment stage, where "'the ultimate question is one
24 that can only be resolved through a searching inquiry – one that is
25 most appropriately conducted by a factfinder, upon a full record,'"
26 with an opportunity to evaluate the witnesses. *Chuang*, 225 F.3d at

27 _____

28       [35]Dkt. #34, p. 13.

12 - MEMORANDUM OPINION AND ORDER

1 1124 (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410
2 (9th Cir. 1996)).

3     Notably, following oral argument on the defendants' motion,
4 they submitted to the court a recording of the two voice mail
5 messages Warren left for the Ogdens.  Although the recordings are
6 not of the best quality, the court was able to make out most of
7 what was said and the general tone of voice Warren used during the
8 messages.  Neither Warren's tone nor the content of the messages
9 changes the court's opinion that summary judgment is inappropriate.

10     Accordingly, the defendants' Motion for Summary Judgment is
11 **denied** as to the plaintiffs' First and Third Claims.

12     With regard to the Ogdens' Second Claim, summary judgment is
13 also inappropriate.  In this claim, the Ogdens seek penalty wages
14 for RWT's allegedly tardy payment of wages due them at the time of
15 their discharge.  They note the applicable law requires payment of
16 wages "not later than the end of the first business day after the
17 discharge or termination."  ORS § 652.140(1).  The defendants,
18 however, argue the Ogdens were not terminated, but instead quit
19 voluntarily.  According to the defendants, all wages the Ogdens
20 were due through October 18, 2010, had been paid.  Once the Ogdens
21 quit their jobs, payment of any additional wages was not triggered
22 until the Ogdens submitted additional time records, after which the
23 wages had to be paid within five days pursuant to ORS
24 § 652.140(2)(c).  The defendants assert the additional wages were,
25 in fact, paid within five days after RWT received the Ogdens'
26
27
28

13 - MEMORANDUM OPINION AND ORDER

letter demanding additional wages, and therefore, no penalty wages are due.[36]

As with the Ogdens' First and Third Claims, resolution of this claim depends on the determination of whether the Ogdens were discharged, or alternatively, whether they quit voluntarily.  The existence of this issue of fact precludes summary judgment, and the defendants' motion is **denied** as to the Ogdens' Second Claim.

### *CONCLUSION*

For the reasons discussion above, the defendants' Motion for Summary Judgment is **denied.**

IT IS SO ORDERED.

Dated this 25th day of July, 2012.


/s/ Dennis J. Hubel
_____
Dennis James Hubel
Unites States Magistrate Judge

---

[36]Dkt. #26, pp. 13-16.

14 - MEMORANDUM OPINION AND ORDER